# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| KITSAP COUNTY, a political subdivision of the State of Washington, | No. 50011-6-II |
| Respondent, | |
| v. | |
| KITSAP RIFLE AND REVOLVER CLUB, a not-for-profit corporation registered in the State of Washington, and JOHN DOES and JANE ROES I-XX, inclusive, | UNPUBLISHED OPINION |
| Appellant. | |
| IN THE MATTER OF NUISANCE AND UNPERMITTED CONDITIONS LOCATED AT One 72-acre parcel identified by Kitsap County Tax Parcel ID No. 362501-4-002-1006 with street address 4900 Seabeck Highway NW, Bremerton Washington. | |

MAXA, A.C.J. – The Kitsap Rifle and Revolver Club (Club) appeals the trial court's order of contempt, which enjoined the Club from operating a shooting facility on its property until it obtained a site development activity permit (SDAP) for prior site development work performed without a permit. The court found the Club in contempt for failing to comply with the court's supplemental order requiring the Club to apply for an SDAP for the prior development work within 180 days.

We hold that the trial court did not err in finding the Club in contempt because (1) the plain language of RCW 7.21.030(2) shows that the trial court was not required to make an express finding that the Club was able to comply with the court's supplemental order, (2)

substantial evidence supports the trial court's implied finding that the Club was able to comply with the court's supplemental order, (3) substantial evidence supports the trial court's finding that the Club intentionally failed to comply with the court's supplemental order, and (4) substantial evidence supports the trial court's finding that the Club failed to submit an SDAP application when it declined to pay the required application fee. However, we hold that the trial court erred in ruling that the Club was required to *obtain* an SDAP (rather than apply for one) in order to purge the contempt because actually obtaining a permit is beyond the Club's control.

Accordingly, we affirm the trial court's contempt order except for the requirement that the Club obtain an SDAP in order to purge the contempt. We remand for the trial court to address the imposition of a proper purge condition.

FACTS

*County's Lawsuit Against the Club*

The Club has operated a shooting facility in the same general location in Bremerton since the 1920s. *Kitsap County v. Kitsap Rifle & Revolver Club*, 184 Wn. App. 252, 262, 337 P.3d 328 (2014).[1] As of 1993, the Club's operation was a lawful, nonconforming use. *Id.* at 262-63.

Beginning in the 1990s, the Club engaged in extensive development of the property on which its shooting range was located. *Id.* at 264. This development included clearing and excavating wooded or semi-wooded areas, removing vegetation, replacing a water course that ran through a wetland buffer with two 475-foot culverts, and excavating and moving soil. *Id.* The Club did not obtain permits for any of this work. *Id.*

---

[1] A more complete version of the facts leading up to the County's lawsuit is included in *Kitsap Rifle*, 184 Wn. App. at 262-66.

In 2011, the County filed a complaint against the Club, alleging in part that the Club had engaged in unlawful development activities because it lacked the necessary permits. *Id.* at 265. After a bench trial, the trial court concluded that the Club's use of the property was illegal because it had not obtained any permits for its development work. *Id.* at 266. The court entered conclusions of law that this unpermitted use terminated the nonconforming use of the Club's property as a shooting range. *Id.* at 265-66. On that basis, the trial court issued a permanent injunction prohibiting the Club from using its property as a shooting range until it obtained the proper permits. *Id.* at 266.

On appeal, this court affirmed the trial court's ruling that the Club's development work violated County land use permitting requirements. *Id.* at 275. However, the court held that terminating the Club's nonconforming use status was not a proper remedy. *Id.* at 300-01. The court remanded for the trial court to determine the proper remedies for the Club's permitting violations. *Id.* at 301.

*Order Supplementing Judgment*

On remand, the trial court entered an Order Supplementing Judgment on Remand. The supplemental order stated,

> A permanent, mandatory injunction is hereby issued further requiring Defendant to apply for and obtain site development activity permitting to cure violations of KCC [Kitsap County Code] Titles 12 and 19 found to exist on the Property in the original Judgment. Defendant's application for permitting shall be submitted to Kitsap County within 180 days of the entry of this final order.

Clerk's Papers (CP) at 286. The court entered the order on February 5, 2016, with the 180-day period set to end on August 3.

The Club took some immediate steps to comply with the court's order. First, the Club engaged consultants to draft a scope of work, which listed the required activities for the Club to comply with the relevant permitting requirements. Preparing the scope of work cost $8,000, and was completed on February 24. The scope of work estimated that the cost of preparing the Club's SDAP applications would exceed $158,000 and that the cost of completing all required activities would be $398,939.

Second, the Club submitted the scope of work to its insurer, Northland Insurance Company. Northland had been participating in the Club's defense of the County's lawsuit, but denied coverage for the costs associated with the scope of work. On July 28, the Club informed the County of the Club's dispute with Northland and the Club's intent to pursue avenues to receive coverage from Northland.

*Motion for Contempt*

The Club did not submit an SDAP application by the August 3 deadline. On August 18, the County filed a motion for contempt, requesting that the court prohibit the Club from operating a shooting range until it submitted an application for an SDAP.

In response, the Club submitted a declaration from Marcus Carter, its executive officer. Carter stated that the Club had been attempting to comply with the court's order by obtaining the scope of work and seeking money from its liability insurer to pay for the required work. He noted that the Club was a nonprofit organization with no endowment and stated that its 2016 end-of-month operating account balances never exceeded $11,000. Carter stated, "The Club has never intended to disobey or violate the SDAP order. The Club has taken steps to comply, and it is still engaged in the difficult task of persuading or forcing its insurer to pay for the SDAP work.

The Club wants to comply with the SDAP order, but has lacked the means to do so in the time frame ordered." CP at 218.

The trial court held a hearing on August 26. The Club focused on the ongoing coverage dispute with its liability insurer, and argued that it was unable to comply with the court's order because of the expense. The court declined to find the Club in contempt at that time and provided 90 additional days for the Club to file the required SDAP application. The court scheduled a second hearing for December 2.

Carter submitted a declaration stating that on November 28 the Club had "attempted to submit an SDAP application to the County." CP at 330. Carter stated, "The Club prepared the application materials without the assistance of any professional consultant or engineer because it was unable to afford those types of services without funding from its insurer. The Club made a good faith effort to prepare the application using the application forms and instructions provided on the Kitsap County website." CP at 330-31. Carter also stated,

> Any lack of compliance by the Club with the SDAP order in the supplemental judgment is not intentional and is in spite of the Club's good faith efforts to comply or obtain the financial means to do so. The Club wishes to hire qualified professionals to assist with its SDAP application, but without insurance coverage for the cost of those services that level of compliance with the SDAP order is not within the Club's power to perform. The Club intends to continue its attempts to work with both the County and its insurer to resolve all issues related to the SDAPs.

CP at 331.

Before the second contempt hearing, the County submitted a declaration from Jeffrey Rowe, the deputy director of the Kitsap County Department of Community Development. According to Rowe, when Carter attempted to submit the Club's application he indicated that he was not prepared to pay the associated fee. Rowe informed Carter that the fees were a part of a

complete application and that the County could not accept a permit application until the applicant paid the required fees. Carter stated that the Club was unable to pay the fees because it had no money. Carter then left without submitting the application. The record shows that the appropriate application fee was either $1,512 or $3,612, depending on the type of application required.

Rowe did not review at that time the application materials that Carter attempted to submit. Rowe later reviewed the application when Carter attached it to his declaration, and Rowe determined that the application was deficient in multiple respects.

*Second Contempt Hearing*

At the second contempt hearing, the County argued that the Club had not met its burden of establishing an inability to pay the expenses of the permit process. The County noted that the Club had presented only Carter's unsupported assertions and had not submitted bank statements, asset and liability information, or tax returns. The County also pointed out that there was no information about whether the Club had made efforts to obtain grant funding or engage in fundraising to pay for the necessary expenses.

The Club emphasized that it was not trying to avoid complying with the court's order, but stated that it lacked the ability to pay for the professional and engineering services required to submit a complete SDAP application. The Club argued that Carter's two declarations provided unrebutted evidence that it was unable to pay the $158,000 cost for those services.

The trial court granted the County's motion for contempt and gave a brief oral ruling:

Well, I thought that 90 days would help. I certainly thought that two years from the time that the Court of Appeals made a decision would alert the Club, we need to do fundraising, we need to do something to make sure that we're in compliance with the original order that was affirmed by the Court. Based on that, I think the County's

6

position is well-taken, they've not come through with what they were ordered to do, and I am going to enjoin the Club from further operations until they comply.

Verbatim Report of Proceedings (Dec. 2, 2016) at 18-19.

*Contempt Order*

The trial court entered an order granting the County's motion for contempt and making findings of fact and conclusions of law. The court found:

> 3. [The Club] failed to submit an application for an SDAP within 180 days of the entry of the Supplemental Judgment and has failed to submit a complete application as of the date of the entry of this order.
> 4. [The Club]'s failure to comply with the Supplemental Judgment's mandatory injunction to submit a permitting application to Kitsap County within 180 days was intentional.

CP at 412. The court did not make an express finding of fact that the Club had the ability to comply with the supplemental order.

The court entered a conclusion of law that the Club was in contempt of court. The court also concluded that "[a]n injunction prohibiting [the Club] from operating a shooting facility until it obtains an application for permitting is an appropriate remedial sanction for [the Club]'s contempt of court." CP at 412. On that basis, the court ordered, "[The Club] is enjoined from operating a shooting facility until such time that [the Club] *obtains* permitting in compliance with KCC Titles 12 and 19." CP at 413 (emphasis added).

The Club appeals the trial court's contempt order.

ANALYSIS

A.    REMEDIAL CONTEMPT SANCTIONS

Chapter 7.21 RCW provides courts with the authority to impose sanctions on a person for contempt of court. Contempt of court includes the "intentional . . . [d]isobedience of any lawful

judgment, decree, order, or process of the court." RCW 7.21.010(1)(b). The person subject to contempt is referred to as the "contemnor."

The contempt statutes distinguish between remedial (or civil) sanctions and punitive (or criminal) sanctions for contempt of court. *In re Interest of Silva*, 166 Wn.2d 133, 141, 206 P.3d 1240 (2009). Remedial sanctions are "imposed for the purpose of coercing performance when the contempt consists of the omission or refusal to perform an act that is yet in the person's power to perform." RCW 7.21.010(3). Punitive sanctions are imposed to punish past contempt of court to uphold the court's authority. RCW 7.21.010(2).

A court can impose a remedial sanction after notice and hearing. RCW 7.21.030(1). But an action to impose a punitive sanction must be initiated by the prosecutor, RCW 7.21.040(2), and the person subject to contempt must receive the due process rights afforded to criminal defendants. *Silva*, 162 Wn.2d at 141.

Under RCW 7.21.030(2), a court may find a person in contempt of court and impose a remedial sanction "[i]f the court finds that the person has failed or refused to perform an act that is yet within the person's power to perform." The court may impose one or more of several listed sanctions, including "[a]n order designed to ensure compliance with a prior order of the court." RCW 7.21.030(2)(c).

The contempt statutes provide three requirements for imposing remedial contempt sanctions. First, the contemnor must have "failed or refused to perform an act," RCW 7.21.030(2), which under RCW 7.21.010(1)(b) includes the disobedience of a lawful order. Second, the failure to perform an act must have been intentional. RCW 7.21.010(1). Third, the act must have been within the contemnor's power to perform. RCW 7.21.030(2).

We review contempt rulings for an abuse of discretion. *Dep't of Ecology v. Tiger Oil Corp.*, 166 Wn. App. 720, 768, 271 P.3d 331 (2012). " 'Whether contempt is warranted in a particular case is a matter within the sound discretion of the trial court; unless that discretion is abused, it should not be disturbed on appeal.' " *Moreman v. Butcher*, 126 Wn.2d 36, 40, 891 P.2d 725 (1995) (quoting *In re Pers. Restraint of King*, 110 Wn.2d 793, 798, 756 P.2d 1303 (1988)). A trial court abuses its discretion if its contempt decision was manifestly unreasonable or based on untenable grounds. *Holiday v. City of Moses Lake*, 157 Wn. App. 347, 355, 236 P.3d 981 (2010). In addition, a contempt ruling based on an erroneous view of the law or an incorrect legal analysis constitutes an abuse of discretion. *In re Estates of Smaldino*, 151 Wn. App. 356, 364, 212 P.3d 579 (2009).

When applicable, the trial court's finding of contempt also must be supported by substantial evidence. *In re Rapid Settlements, Ltd.*, 189 Wn. App. 584, 601, 359 P.3d 823 (2015), *review denied*, 185 Wn.2d 1020 (2016). Substantial evidence is evidence that is sufficient to persuade a rational, fair-minded person of the finding's truth. *Blackburn v. Dep't of Soc. & Health Servs.*, 186 Wn.2d 250, 256, 375 P.3d 1076 (2016).

B.      ABILITY TO COMPLY WITH ORDER

The Club argues that the trial court erred in imposing remedial contempt sanctions because the Club was financially unable to comply with the court's supplemental order that the Club apply for and obtain an SDAP for its prior unpermitted development work. We hold that the trial court did not err in implicitly finding that the Club had not met its burden of proving that it was unable to comply with the supplemental order.

1.   Legal Principles

As noted above, one requirement for imposing remedial sanctions is a finding that compliance with a court's order is "within the person's power to perform." RCW 7.21.030(2). In the context of civil or remedial contempt, we presume that a person is able to perform actions required by the trial court. *Moreman*, 126 Wn.2d at 40. Therefore, the inability to comply with a court order is an affirmative defense to contempt. *Id.*

The contemnor has both the burden of production and the burden of persuasion regarding his or her claimed inability to comply. *Id.* To meet this burden, the contemnor must " 'offer evidence as to his inability to comply and the evidence must be of a kind the court finds credible.' " *Id.* at 40-41 (quoting *King*, 110 Wn.2d at 804). In other words, before imposing a coercive sanction, the trial court must find that the contemnor has failed to prove an inability to perform the act at issue.

2.   Requirement of Express Finding

The Club argues that RCW 7.21.030(2) required the trial court to make an *express* finding regarding the Club's ability to comply with the court's order before imposing remedial sanctions. The Club claims that the contempt order is invalid in the absence of such an express finding. We disagree.

a.   Principles of Statutory Interpretation

Interpreting RCW 7.21.030(2) is a question of law that we review de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014). The primary goal of statutory interpretation is to determine and give effect to the legislature's intent, as evidenced by "the language of the provision in question, the context of the statute in which the provision is found, and related

statutes." *State v. Evergreen Freedom Foundation*, 1 Wn. App. 2d 288, 299, 404 P.3d 618 (2017). We give undefined statutory language its usual and ordinary meaning and interpret words in the context of the statute in which they appear. *AllianceOne Receivables Mgmt., Inc. v. Lewis*, 180 Wn.2d 389, 396, 325 P.3d 904 (2014).

When interpreting the plain meaning of a statute's words, we look to the context in which they are used. *Evergreen Freedom Foundation*, 1 Wn. App. 2d at 299. When the legislature uses different terms in the same statute, we presume the legislature intended the terms to have different meanings. *Densley v. Dep't of Ret. Sys.*, 162 Wn.2d 210, 219, 173 P.3d 885 (2007).

If the plain meaning of a statute is unambiguous, we must apply that plain meaning as an expression of legislative intent without considering extrinsic sources. *Jametsky*, 179 Wn.2d at 762. A statute is ambiguous if its language is subject to more than one reasonable interpretation. *Id.* We resolve ambiguities by considering other indications of legislative intent, including principles of statutory construction, legislative history, and relevant case law. *Id.*

b.    Language of RCW 7.21.030(2)

RCW 7.21.030(2) states, "*If the court finds* that the person has failed or refused to perform an act that is yet within the person's power to perform," then the court may find the person in contempt and impose remedial sanctions. (Emphasis added.) The phrase "if the court finds" clearly requires the trial court to decide whether the person has the ability to perform before imposing remedial sanctions. But stating that a court must *decide* an issue is different than stating that the court must make an *express finding* on that issue.

Two aspects of RCW 7.21.030(2) suggest that the trial court is not required to make an express finding regarding ability to perform. First, the plain statutory language does not

specifically require an express finding. RCW 7.21.030(2) uses the language "[i]f the court finds" instead of "if the court *expressly* finds" or "if the court *makes a finding*." A court can "find" a fact without making an express finding. We will not use statutory interpretation to add language that the legislature did not use. *Nelson v. Dep't of Labor & Indus.*, 198 Wn. App. 101, 110, 392 P.3d 1138 (2017).

Second, the legislature did use the phrase "expressly finds" in a different subsection of RCW 7.21.030(2). RCW 7.21.030(2)(d) states that the trial court may impose a remedial sanction not specified in (a) through (c) "if the court *expressly finds* that those sanctions would be ineffectual." (Emphasis added.) The legislature's decision to use the term "expressly finds" in subsection (2)(d) but not in subsection (2)(b) suggests that the legislature did not intend to require an express finding under RCW 7.21.030(2)(b).

  c. Case Law

No Washington case has specifically addressed this issue. And the few cases discussing remedial sanctions do not clearly require an express finding.

The discussion by Division Three of this court in *Rapid Settlements* provides some support for a rule that an express finding is not required. *Rapid Settlements* addressed a different issue: whether RCW 7.21.010(1) required an express finding concerning a contemnor's *intent*. 189 Wn. App. at 604-05. That statute states that contempt of court means "intentional" disobedience. RCW 7.21.010(1). The court compared other statutes that clearly require the trial court to make a written finding. *Rapid Settlements*, 189 Wn. App. at 605; *see* RCW 4.84.185 (court may award expenses "upon written findings by the judge that the action . . . was frivolous"); RCW 13.34.155(2)(b) ("dependency court . . . must make a written finding" that

parenting plan is in a child's best interest); RCW 13.40.193(2)(a) (juvenile unlawfully in possession of a firearm must receive a certain disposition "unless the court makes a written finding" otherwise). The court held that, because nothing in chapter 7.21 RCW stated that the trial court had to make a written finding of intentional conduct, such a finding was not required. *Rapid Settlements*, 189 Wn. App. at 605.

The language "if the court finds" in RCW 7.21.030(2) is different than the language of RCW 7.21.010(1), which does not refer to any finding when requiring that a failure to act be intentional. But the statutes cited in *Rapid Settlements* are still more specific than RCW 7.21.030(2), and the same analysis applies here.

The Club relies on *Britannia Holdings Ltd. v. Greer*, 127 Wn. App. 926, 113 P.3d 1041 (2005), to support its argument that the trial court was required to make an express finding. In *Britannia Holdings*, Division One reversed a finding on contempt because the trial court did not find that the contemnors had the present ability to comply. *Id.* at 928. The contemnors were judgment debtors who claimed that they lacked funds to comply with a court-ordered payment. *Id.* at 928-29. The trial court found the debtors in contempt because, although they previously had control over sufficient funds, they transferred the money to foreign countries and therefore knowingly disobeyed the court's orders. *Id.* at 929-30.

Division One stated that a threshold requirement of the exercise of contempt power "is a finding of *current* ability to perform the act previously ordered." *Id.* at 934. The court held that the trial court erred by failing to "make a finding" that the contemnors had the ability to purge the contempt at the time of the contempt order. *Id.* However, the court did not specifically

13

address whether the trial court was required to make an *express* finding. Instead, the court's focus was on the contemnors' current as opposed to previous ability to pay.

In another case, *In re Guardianship of Wells*, Division One indicated that an express finding of ability to comply is not necessarily required under RCW 7.21.030(2). 150 Wn. App. 491, 501-02, 208 P.3d 1126 (2009). Division One recognized its statement in *Britannia Holdings* that a threshold requirement for a court's exercise of contempt power was a finding of a current ability to perform the act ordered. *Id.* at 500 n.16. The court noted that although the trial court did not enter specific findings on the contemnor's ability to comply, the contemnor represented that he had the ability and the evidence was undisputed that he had the current ability to comply. *Id.* at 501. The court held that "[u]nder the circumstances, the court's order recognizing [the contemnor's] ability to pay was a sufficient determination to support the court's order of contempt. *Id.* at 501-02. The court concluded, "[The contemnor] had the burden to show he was unable to comply with the trial court's order. Given his testimony, he could not meet this burden." *Id.* at 502.

d.    Conclusion

We hold that when a trial court imposes a remedial sanction under RCW 7.21.030(2), the court is not required to make an express finding that the contemnor has failed to prove the inability to comply with the court's prior order. This holding is supported by the plain language of RCW 7.21.030(2), which does not specifically require an express finding regarding the contemnor's ability to perform but in a related subsection does require an express finding on another matter. Further, the case law does not clearly require an express finding.

14

Accordingly, we hold that the trial court did not err in imposing remedial sanctions without making an express finding that the Club failed to prove that it was unable to comply with the court's order.

3.  Evidence of Club's Inability to Comply

The Club argues that even if the trial court was not required to make an express finding regarding the Club's ability to comply with the supplemental order, the trial court erred in imposing remedial sanctions for contempt because the evidence did not support an implied finding that the Club had the ability to comply. The Club emphasizes that it presented evidence that it did not have the financial ability to comply and the County made no effort to rebut that evidence. We hold that the trial court did not err.

As noted above, the trial court must make at least an implicit finding that the contemnor has the ability to comply before imposing a coercive sanction. RCW 7.21.030(2). And the ability to comply with a court order is an affirmative defense to contempt and the contemnor has the burden of production and persuasion. *Moreman*, 126 Wn.2d at 40. Although no court appears to have addressed the standard of proof for proving an affirmative defense to contempt, the general civil standard is preponderance of the evidence. *See Dep't of Labor & Indus. v. Rowley*, 185 Wn.2d 186, 208, 378 P.3d 139 (2016).

Here, the Club presented limited evidence that it lacked sufficient funds to complete an SDAP application. Carter's declaration showed that completing the application alone would cost in excess of $158,000 and that the Club's end-of-month operating account balances in 2016 never exceeded $11,000. The County did not rebut the cost of an application, but argued that the Club failed to present information about its financial situation, including tax returns, assets and

15

liabilities, or bank statements.  The County argued that the Club presented only unsupported assertions, which were insufficient to show an inability to pay.

The trial court was in the best position to evaluate the evidence.  The Club had the burden of proving to the court that it was financially unable to comply with the court's order.  And as the court stated in *Moreman*, the person subject to contempt must present evidence of a kind that the court finds credible.  126 Wn.2d at 40-41.  In light of the minimal evidence the Club presented, it is apparent that the court concluded that the Club did not present credible evidence of inability to pay and therefore did not meet its burden of proof.  Given the abuse of discretion standard of review, we will not second guess the court's determination.

Accordingly, we hold that the lack of detailed evidence regarding the Club's claim that it was unable to comply with the court's order supports the trial court's imposition of remedial sanctions under RCW 7.21.030(2).

C.      FINDING OF INTENTIONAL FAILURE TO COMPLY

The Club argues that the trial court erred in entering the contempt order because substantial evidence does not support the court's finding that the Club's violation of the court's supplemental order was intentional.  We disagree.

RCW 7.21.010(1) states that contempt of court must be intentional.  Therefore, a person must act intentionally to be found in contempt.  *Rapid Settlements*, 189 Wn. App. at 605.  Here, the trial court expressly found that the club's failure to comply with the court's order was intentional.

Chapter 7.21 RCW does not define "intentional" and no contempt case has discussed this requirement in depth.  One clear rule is that for a contemnor to act intentionally, he or she must

have actual or constructive knowledge of the "existence and substantive effect of the court's order or judgment." *Smaldino*, 151 Wn. App. at 365. In addition, the court's order must be clear enough that the contemnor understands what is necessary for compliance. *See Tiger Oil*, 166 Wn. App. at 769-71 (stating that contradictory provisions in two consent decrees supported the contemnor's argument that it did not intentionally disobey one of the consent decrees).

The Club claims that its failure to comply with the court's supplemental order was not intentional because it was financially unable to comply. But as discussed above, the contemnor's inability to comply is a separate affirmative defense to the imposition of remedial sanctions. No court has suggested that a contemnor's ability to comply is relevant to whether he or she intentionally did not comply.

There is no question that the Club had actual knowledge of the court's supplemental order. And the order's requirement was clear: the Club had to apply within 180 days for an SDAP for the development work performed without a permit. Further, at the first contempt hearing the court again made it clear that the Club had to apply for an SDAP within the 90 day extension.

Despite the clear requirement in the court's order, the Club failed to submit an application for an SDAP. Carter brought an application to the County offices, but after stating that the Club could not afford the application fee he left without submitting it. Although the Club may have had an explanation for its failure to comply, there is no question that the failure was intentional in the sense that the Club *deliberately* did not submit an application.

Accordingly, we hold that substantial evidence supports the trial court's finding of fact that the Club intentionally failed to comply with the court's order.

D.      VIOLATION OF APPLICATION REQUIREMENT

The Club argues that based on a strict reading of the supplemental order, substantial evidence does not support the trial court's finding that the Club failed to submit an SDAP application in violation of the order. The Club argues that the order required only that the Club submit an application, without specifying what qualified as a proper submission. We disagree.

When determining whether the contemnor violated a court's order, we must strictly construe the order in the contemnor's favor. *Rapid Settlements*, 189 Wn. App. at 601-02. Further, the contemnor must have committed a plain violation of the order. *Id.*

The trial court's supplemental order stated that the Club was required to apply for an SDAP to cure violations of KCC Titles 12 and 19 and that an "application for permitting shall be submitted" within 180 days. CP at 286. In its contempt order, the trial court made a finding that the Club "failed to submit an application for an SDAP within 180 days" of its order and "failed to submit a complete application" as of the date of the contempt order. CP at 412.

The Club argues that it did comply with the court's supplemental order when Carter delivered to the County an application he completed using the forms and instructions on the county's website. The Club acknowledges that the County later determined that the application that Carter proffered had multiple deficiencies. But the Club emphasizes that the court's order did not specify that the application be without deficiencies or acceptable to the County, only that the application be made. The Club claims that under a strict construction of the court's order, it complied with the order by bringing the application to the County.

We need not decide whether submitting a patently deficient application would constitute compliance with the court's supplemental order because the evidence is undisputed that the Club

18

did not actually submit an SDAP application with the County. Carter stated only that the Club had "*attempted* to submit" the application. CP at 330 (emphasis added). The County informed Carter that it could not accept an application unless he paid a required filing fee, and he was not prepared to pay the fee. Carter then took the application and left.

The Club does not address its failure to pay the application fee. But it is clear that under the Kitsap County Code, permit applications must include any applicable fees. KCC 21.04.160; *see also* KCC 21.04.030 (stating that the review process includes "[p]aying the appropriate fees"). Therefore, paying the required fee is a prerequisite to submitting an SDAP application.

Accordingly, we hold that substantial evidence supports the trial court's finding of fact that the Club did not submit an SDAP application as of the date of the contempt order.

E. PUNITIVE PURGE CONDITION

The Club argues that even if the trial court did not err in finding the Club in contempt and deciding to impose a sanction, the sanction imposed was punitive rather than remedial and therefore was improper. Specifically, the Club focuses on the requirement in the contempt order's purge condition that the Club *obtain* a permit rather than merely requiring a permit application. We agree.

1. Legal Background

As noted above, a remedial or civil sanction is one that is designed to coerce performance when the contempt involves a failure to perform an act. RCW 7.21.010(3). The goal of the sanction is to remedy the nonperformance by subjecting the contemnor to certain consequences until the act is performed. A remedial sanction remedies a contemnor's failure to comply with an order by requiring compliance. *See In re Marriage of Didier*, 134 Wn. App. 490, 501, 140

19

P.3d 607 (2006). Conversely, a punitive sanction simply punishes a past contempt. RCW 7.21.010(2). Imposing a sanction that is punitive rather than coercive in a civil contempt proceeding is improper. *See Didier*, 134 Wn. App. at 501.

To qualify as remedial, a contempt sanction must satisfy three requirements. First, a contempt order must contain a purge condition allowing the contemnor to purge the contempt by committing an affirmative act. *Silva*, 166 Wn.2d at 141-42. The existence of a purge condition shows that the sanction has a coercive effect. *Id.* at 142. A contemnor with the ability to purge the contempt has "the key to the jailhouse door in his possession at all times." *Moreman*, 126 Wn.2d at 43. On the other hand, a sanction is punitive when the contemnor cannot take an action to end the sanction. *See Didier*, 134 Wn. App. at 503-05 (holding that requirement for contemnor to serve a fixed time in jail if he did not pay an obligation by a certain date was punitive).

Second, the contemnor must have the ability to satisfy the purge condition. *Rapid Settlements*, 189 Wn. App. at 613. A sanction becomes punitive when the contemnor cannot purge the contempt. *Id.* As discussed above, to prevent the imposition of sanctions the contemnor has the burden of proving the inability to comply with a court order. *Moreman*, 126 Wn.2d at 40. The same rule applies regarding the inability to comply with a purge condition. *Rapid Settlements*, 189 Wn. App. at 614-15.

Third, if the purge condition involves something other than complying with the original order that the contemnor violated, the condition must be " 'reasonably related to the cause or nature' " of the contempt. *Rapid Settlements*, 189 Wn. App. at 614 (quoting *In re Interest of M.B.*, 101 Wn. App. 425, 450, 3 P.3d 780 (2000)).

In addition, a sanction that initially was remedial may become punitive as circumstances change. If a sanction loses its coercive effect, such as when a contemnor loses his or her ability to comply with the court order that was violated, the court must terminate the sanction. *King*, 110 Wn.2d at 804; *see also M.B.*, 101 Wn. App. at 440 (stating that if it becomes clear that a remedial sanction will not produce the desired result, the justification for such a sanction disappears).

2. Analysis

Here, the trial court's contempt order satisfies the first requirement of a remedial sanction. The order contains a purge condition – the Club can resume operating its shooting facility when it obtains an SDAP. The order clearly is designed to coerce the Club into complying with the court's original order.

However, the contempt order does not satisfy the second requirement. Although the Club may have control over *submitting* an application for an SDAP, it does not have control over *obtaining* an SDAP. The County determines whether to issue development permits. As a result, even if the Club does everything in its power to obtain an SDAP, the Club's ability to satisfy the purge condition is dependent on the County's response to its application. Because the Club does not have the ability to satisfy the purge condition without relying on the County's actions, the contempt order is punitive.

Accordingly, we hold that the trial court erred in imposing a punitive purge condition.

F.     FURTHER PROCEEDINGS

Because the trial court imposed a punitive purge condition, we remand for the trial court to impose a proper purge condition for the otherwise valid contempt order. In addition, two other issues may properly be addressed in future proceedings.

First, the fact that the Club in December 2016 did not prove its inability to comply with the trial court's supplemental order does not preclude the Club from producing new or additional evidence of an inability to comply in a future proceeding. The contemnor must be given the opportunity "at regular intervals, to present new evidence tending to show that the [sanction] has lost its coercive effect or that there is no reasonable possibility of compliance with the court order." *King*, 110 Wn.2d at 805; *see also Moreman*, 126 Wn.2d at 43 (stating that the contemnor could raise the issue with the trial court if a sanction became punitive rather than coercive).

Second, when addressing the purge condition the Club claimed that the trial court's contempt order was punitive because the court should have ordered the Club to cease operations only in the areas where the unpermitted work was performed, not in the entire facility. We do not address this argument because it involves the scope of the sanction, not the purge condition, and the Club did not assign error to the sanction's scope. However, the Club is free to argue in a future proceeding that closing the Club's entire facility as a sanction no longer is coercive but has become punitive.

CONCLUSION

We affirm the trial court's contempt order except for the requirement that the Club actually obtain an SDAP in order to purge the contempt. We remand for the trial court to address the imposition of a proper purge condition.

No. 50011-6-II

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

MAXA, A.C.J.


We concur:

JOHANSON, J.

SUTTON, J.