# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| KITSAP COUNTY, a political subdivision of the State of Washington, | No. 53898-9-II |
| Respondent, | |
| v. | |
| KITSAP RIFLE AND REVOLVER CLUB, a not-for-profit corporation registered in the State of Washington, and JOHN DOES and JANE DOES I-XX, inclusive, | UNPUBLISHED OPINION |
| Appellants. | |
| and | |
| IN THE MATTER OF NUISANCE AND UNPERMITTED CONDITIONS LOCATED at One 72-acre parcel identified by Kitsap County Tax Parcel ID No. 362501-4-002-1006 with street address 4900 Seabeck Highway NW, Bremerton, Washington. | |

MAXA, J. – Kitsap Rifle and Revolver Club (Club) appeals the trial court's June 2019 order amending the court's February 2016 supplemental judgment. In the June 2019 order, the trial court ruled that certain activities at the Club's shooting range were expansions of the Club's nonconforming use and prohibited those activities. This court had vacated the February 2016 supplemental judgment and remanded for the trial court to clarify that judgment. The trial court had entered the February 2016 supplemental judgment after this court vacated the trial court's original judgment entered in 2012 following a lengthy trial.

In the June 2019 order, the trial court entered a declaratory judgment ruling that the following activities constituted unlawful expansions of the Club's nonconforming use: (1) discharging cannons or causing exploding targets to explode, (2) discharging fully automatic firearms and discharging semiautomatic rifles larger than nominal .30 caliber, and (3) conducting more than two practical shooting competitions and 10 scheduled shooting practices per month. The court entered a land use injunction prohibiting those activities.

The Club argues that the June 2019 order must be vacated and the case remanded because the trial court (1) did not follow this court's instructions on remand in that the prohibitions on cannons and exploding targets, fully automatic weapons and semiautomatic rifles greater than .30 caliber, and the number of practical shooting competitions and practices do not reflect that only expansions of nonconforming use and not mere intensifications can be prohibited; (2) failed to define important terms in the land use injunction that are vague or ambiguous; and (3) failed to balance the interests of the parties and the public in issuing the land use injunction. Underlying all these arguments is the Club's contention that additional fact finding is required on remand to properly tailor the appropriate remedies for the Club's expansion of use.

We hold that (1) the trial court erred by concluding that more than two scheduled practical shooting competitions per month and more than ten scheduled practical shooting practices per month constituted an unlawful expansion of the Club's nonconforming use but did not err regarding the other declaratory judgment provisions, (2) the trial court erred by enjoining discharging cannons without defining the term "cannons" but did not err in failing to define other terms in the land use injunction, and (3) the balancing of the equities requirement for issuing an injunction does not apply here.

Accordingly, we vacate in part the declaratory judgment and land use injunction in the trial court's June 2019 order and remand with specific instructions for the trial court to (1) determine the number of practical shooting competitions and practices held at the Club before the expansion of use in 2005 or 2006 and to prohibit only those competitions and practices above that number, and (2) define the term "cannons." We affirm the remaining portions of the June 2019 order's declaratory judgment and land use injunction.

FACTS

*Background*

The Club is a nonprofit corporation that has operated a shooting range in Bremerton since its founding in 1926. In 1993, the Kitsap County Board of Commissioners notified the Club that it considered the Club's use of the shooting range to be a lawfully established nonconforming use. Before 1993, club members and members of the general public used small caliber weapons and shooting occurred only occasionally and for short periods of time. The use of automatic weapons and rapid-fire shooting occurred infrequently.

In 2005 or 2006, the Club's use of the shooting range changed. For profit companies began using the shooting range for classes and for training military personnel. The range frequently was used for scheduled practical shooting practices and competitions, resulting in loud, rapid-fire shooting for several hours. The Club also allowed the use of exploding targets and cannons. The use of explosive devices and higher caliber weaponry as well as practical shooting practices and competitions increased the noise level of the Club's shooting activities. Shooting became clearly audible in neighborhoods near the range and frequently was loud, disruptive, and long in duration.

In 2011, the County filed a complaint for an injunction, declaratory judgment, and nuisance abatement against the Club. The County alleged that the Club's changes in use of the shooting range were unlawful expansions of the Club's nonconforming use.

After a lengthy bench trial, the trial court in 2012 issued detailed findings of fact and conclusions of law. The court ruled that the Club had significantly changed and enlarged the existing use through expanded hours, commercial and military use, and increased noise levels because of explosive devises, higher caliber weapons greater than .30 caliber, and practical shooting. The court concluded that these actions were expansions and not merely intensifications of the nonconforming use. The court ruled that this expansion of use terminated the nonconforming use status of the Club's property.

The trial court issued a permanent land use injunction prohibiting the Club from operating as a shooting range until the County issued a conditional use permit for the property. The court also issued a permanent nuisance injunction prohibiting the use of fully automatic firearms, "rifles of greater than nominal .30 caliber" and "exploding targets and cannons," and prohibiting operation of the range before 9:00 AM and after 7:00 PM. Clerk's Papers (CP) at 114.

*Kitsap Rifle* I

The Club appealed the trial court's declaratory judgment and permanent injunctions to this court. *Kitsap County v. Kitsap Rifle & Revolver Club* (*Kitsap Rifle* I), 184 Wn. App. 252, 266, 337 P.3d 328 (2014). A commissioner of this court granted a stay of the trial court's injunction while the appeal was pending. *Id.*

In *Kitsap Rifle* I, the Club did not assign error to any of the trial court's findings of fact regarding the Club's expansions of its nonconforming use. *Id.* at 267. Consequently, those unchallenged findings became verities on appeal. *Id.*

4

This court upheld the trial court's conclusions that commercial and military use of the shooting range and dramatically increased noise levels constituted impermissible expansions of the Club's nonconforming use.[1] *Id.* at 273-74. However, the court concluded that termination of the nonconforming use was not the proper remedy. *Id.* at 300-01. As a result, the court vacated the trial court's injunction prohibiting the Club from operating as a shooting range. *Id*. at 301. The court stated that the appropriate remedy "must reflect the fact that some change in use – 'intensification' – is allowed and only 'expansion' is unlawful." *Id*. The court remanded for the trial court "to determine the appropriate remedies for the Club's expansion of its nonconforming use." *Id.*

The court also affirmed the trial court's conclusion that excessive noise and other activities constituted a public nuisance. *Id.* at 261, 303. The court affirmed "the trial court's injunction limiting certain activities at the Club in order to abate the Club's nuisance activities." *Id.* at 303-04.

*Remand from Kitsap Rifle* I

On remand from *Kitsap Rifle* I, the Club filed a motion to reopen the record. The Club sought to introduce evidence of the Club's operations during this court's stay order, including a study of the shooting range's noise levels, arguing that this evidence was necessary for the trial court to fashion an appropriate remedy. The trial court denied the Club's motion to reopen the record. The court stated that it did not believe that *Kitsap Rifle* I anticipated reopening the record and that additional evidence was not necessary to determine the proper remedy.

---

[1] This court disagreed with the trial court's determination that the shooting range's increased operating hours constituted an expansion of use. 184 Wn. App. at 272.

On February 5, 2016, the trial court issued an Order Supplementing Judgment on Remand. The order replaced only the declaratory judgment provision and the land use injunction precluding operation of the shooting range in the 2012 judgment. The court granted declaratory judgment and ruled that "activities and uses of the Property consisting of military training uses; commercial, for-profit uses; and uses increasing noise levels by allowing explosive devices, higher caliber weaponry greater than .30 caliber and practical shooting, each constitute unlawful expansions of and changes to the nonconforming use of the Property as a shooting range." CP at 124. The order issued a "Land Use Injunction" prohibiting the following expanded uses:

1. Commercial, for-profit uses;
2. Military training uses;
3. Use of explosive devices including exploding targets;
4. Use of high caliber weaponry greater than .30 caliber; and
5. Practical shooting, uses, including organized competitions and practice sessions.

CP at 124. The supplemental order did not eliminate or revise the permanent nuisance injunction contained in the 2012 judgment.

*Kitsap Rifle* II

The Club appealed the trial court's ruling denying the motion to reopen the record, and the court's declaratory judgment and land use injunction. *Kitsap County v. Kitsap Rifle* (*Kitsap Rifle* II), No. 48781-1-II, slip op. at 1 (Wash. Ct. App. Nov. 21, 2017) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2048781-1-II%20Unpublished%20Opinion.pdf.

In *Kitsap Rifle* II, this court affirmed the trial court's decision to deny the Club's motion to reopen the record on remand. *Id*. at 10-13. However, the court vacated the portion of the trial court's injunction that prohibited the "use of explosive devices including exploding targets"; the

6

"use of high caliber weaponry greater than .30 caliber"; and "practical shooting uses, including organized competitions and practice." *Id*. at 2 (internal quotations omitted).[2]

Regarding the use of explosive devices, the court concluded that this part of the trial court's injunction was overbroad and vague because it appeared to prohibit *all* "explosive devices." *Id*. at 19-21. The court noted that the trial court's original permanent injunction prohibited the use of only exploding targets and cannons. *Id*. at 20. The court stated that this prohibition prohibited "more than necessary to remedy the increased noise levels at the shooting range," which constituted the impermissible expansion. *Id*. The court remanded with specific instructions to the trial court (1) "to clarify which explosive devices were found to create an impermissible expansion of the Club's nonconforming use," and (2) "to fashion a remedy that implements its original permanent injunction prohibiting the use of 'exploding targets and cannons.' " *Id*. at 20, 21.

Regarding the use of high caliber weaponry, the court concluded that this part of the trial court's injunction was overbroad because it appeared to prohibit *all* weapons greater than .30 caliber, including pistols and shotguns. *Id*. at 21-23. The court noted that the trial court's original nuisance injunction prohibited only *rifles* that were greater than .30 caliber. *Id*. at 21. In addition, the trial court made findings regarding increased noise levels only from fully and semiautomatic weapons. *Id.* 21-22. And the trial court found that higher caliber weaponry had caused an increase in noise levels only in the previous five to six years. *Id*. at 22. The court remanded with specific instructions to the trial court (1) "to clarify which weapons are prohibited because they create noise levels that constitute an impermissible expansion of the Club's

---

[2] The court also vacated the portion of the trial court's injunction prohibiting commercial, for-profit uses. *Kitsap Rifle* II, Slip Op. at 145. That provision is not at issue in this appeal. The court held that the trial court did not err in prohibiting military training uses. *Id.*

nonconforming use," and (2) to fashion a remedy that "reflect[s] that only the more recent increases in noise levels constitute an expansion of use." *Id*. at 21, 22.

Regarding practical shooting uses, the court concluded that this part of the trial court's injunction was vague because it was not reasonably clear what constituted "practical shooting uses" other than regularly scheduled practices and competitions. *Id*. at 24. In addition, the court noted that the trial court's original order found that activities including practical shooting competitions had caused an increase in noise levels only in the previous five to six years. *Id*. at 23-24. The court remanded with specific instructions for the trial court (1) "to clarify whether 'practical use' includes only practical shooting practices and competitions or whether practical use includes other conduct," and (2) to fashion a remedy that "reflect[s] that only the more recent increases in noise levels constitute an expansion of use." *Id*. at 23, 24.

This court vacated in part the trial court's land use injunction and remanded "with instructions to comply with this court's instructions regarding the permanent injunction." *Id*. at 28.

*Remand from Kitsap Rifle* II

On remand from *Kitsap Rifle* II, the County in May 2019 filed a motion to enter an order amending the February 2016 supplemental judgment. The County submitted a proposed order with the motion.

The Club subsequently filed another motion to reopen the record. The Club sought to introduce evidence of "the difference in the firearms used at the Club before and after 2006 that constituted a sound expansion," "the difference in practical shooting activities at the Club before and after 2006 that constituted a sound expansion," and "the relative interests of the parties and the public before issuing a new injunction remedy." CP at 364. The Club argued that this

8

evidence was necessary for the trial court to resolve factual questions raised in *Kitsap Rifle* II and that the answers to these questions could not be determined from the existing record.

The Club also filed a memorandum opposing the County's motion. In the opposition, the Club proposed definitions for various terms for the trial court to consider in refashioning the terms of the injunction. In response, the County filed a revised proposed order. At oral argument, counsel for both the County and the Club represented that the parties had agreed on some of the terms of the proposed order.

The trial court did not rule on the Club's motion to reopen the record. Instead, the court opted to rule on the County's motion to enter an amended order. The court reasoned that if it entered an order on the County's motion, the Club's motion to reopen the record would be moot.

The trial judge noted that she would be retiring soon and that the case would be assigned to a different judge if the court reopened the record. The court further stated:

> [W]hen I went through your materials . . . I thought; how do I resurrect in my own mind all of the evidence that came in in 2011, 2012? . . . There is just no way I could do that. I confess, I throw myself on my sword, I couldn't do it. And so when I'm looking at, you know, what's an explosive device and how big does it have to be, and .30-caliber this, I'm at a loss. And everyone who potentially is my successor is at a loss, right? I can't imagine if somebody else is going to look at my findings and then look at all the history of the case, both the . . . appellate decisions but also the orders that have been entered subsequent, and be able to ferret out that information.

Report of Proceedings (RP) at 7-8.

The trial court decided to enter the County's revised proposed order amending the February 2016 supplemental judgment. The court stated its reasoning on the record:

> I appreciate that that will probably be Kitsap III from Pierce County, but I'm not sure what else to do. I cannot set this for an evidentiary hearing, certainly not before myself, and I appreciate that this is already on appeal per the Club's notice of appeal of my last decision, so I think it makes most sense that it go up to the Court of Appeals altogether [sic]. And if the Court of Appeals believes there needs to be an

9

evidentiary hearing, it'll come back down for definition of those terms as the Club is proposing.

RP at 31.

In June 2019, the trial court entered an Order Amending February 5, 2016 Order Supplementing Judgment on Remand. The order replaced the declaratory judgment and land use injunction provisions of the 2016 order. The revised declaratory judgment ruled that the following uses at the shooting range were unlawful expansions of the Club's nonconforming use:

1. military training uses;
2. the provision of firearms training courses sanctioned by the military and provided by commercial, for-profit businesses;
3. discharging cannons or causing exploding targets to explode;
4. the discharge of fully automatic firearms or the discharge of semiautomatic rifles larger than nominal .30 caliber; and
5. more than two scheduled practical shooting competitions per month and more than ten scheduled practical shooting practices per month.

CP at 446. The order also issued a revised "Land Use Injunction" prohibiting those uses. CP at 446. The order did not define any of the terms used in the injunction.

The Club appeals the trial court's June 2019 order.

ANALYSIS

A.    LEGAL PRINCIPLES

1.    Expansion of Nonconforming Use

A nonconforming use is one that lawfully existed before a change in regulation and may continue even though the use does not comply with current regulations. *Kitsap Rifle* I, 184 Wn. App. at 268. A nonconforming use may continue because requiring immediate cessation of use would be unfair and potentially would violate due process. *Id*.

A nonconforming use may grow in volume or intensity over time. *Id*. A property owner generally may continue a protected nonconforming use. *Id*. However, "there is no right to

'significantly change, alter, extend, or enlarge the existing use.' " *Id*. (quoting *Rhod–A–Zalea &
35th, Inc. v. Snohomish County*, 136 Wn.2d 1, 7, 959 P.2d 1024 (1998)). A nonconforming use
" 'may be intensified, but not expanded.' " *Kitsap Rifle* I, 184 Wn. App. at 268 (quoting *City of
University Place v. McGuire*, 144 Wn.2d 640, 649, 30 P.3d 453 (2001)). This court in *Kitsap
Rifle* I explained how to distinguish between intensification and expansion:

> "When an increase in volume or intensity of use is of such magnitude as to effect
> a fundamental change in a nonconforming use, courts may find the change to be
> proscribed by the ordinance. Intensification is permissible, however, where the
> nature and character of the use is unchanged and substantially the same facilities
> are used. The test is whether the intensified use is different in kind from the
> nonconforming use in existence when the zoning ordinance was adopted."

*Id*. at 269 (quoting *Keller v. City of Bellingham*, 92 Wn.2d 726, 731, 600 P.2d 1276 (1979)).

### 2. Law of the Case

The law of the case doctrine binds this court to the prior appeal's holdings. *Humphrey
Indus., Ltd. v. Clay St. Assocs. LLC*, 176 Wn.2d 662, 669, 295 P.3d 231 (2013). Questions that
were decided by the prior appellate decision, or that could have been decided if they had been
raised on appeal, " 'will not again be considered on a subsequent appeal if there is no substantial
change in the evidence.' " *Folsom v. County of Spokane*, 111 Wn.2d 256, 263, 759 P.2d 1196
(1988) (quoting *Adamson v. Traylor*, 66 Wn.2d 338, 339, 402 P.2d 499 (1965)).

In *Kitsap Rifle* I, this court affirmed the trial court's conclusion that the increased noise
levels caused by explosive devices, higher caliber weaponry greater than .30 caliber, and
practical shooting was an expansion of the Club's nonconforming use. 184 Wn. App. at 272-73.
Because this court affirmed this conclusion in *Kitsap Rifle* I, the trial court's conclusion of law
regarding the increased noise levels is the law of the case, and we are bound by that conclusion.
*Folsom*, 111 Wn.2d at 263.

However, in *Kitsap Rifle* II, this court vacated and remanded the trial court's conclusions of law regarding explosive devices, higher caliber weaponry, and practical shooting. Slip op. at 27-28. Accordingly, those conclusions did not become the law of the case and we are not bound by them in this appeal.

3.     Standard of Review

In reviewing a declaratory judgment, we review whether substantial evidence supports the trial court's findings of fact and, if so, whether the findings support the trial court's conclusions of law. *Sunnyside Valley Irrig. Dist. v. Dickie*, 149 Wn.2d 873, 879-80, 73 P.3d 369 (2003). Substantial evidence is the "quantum of evidence sufficient to persuade a rational fair-minded person the premise is true. *Id.* at 879. Unchallenged findings of fact are verities on appeal. *See Folsom*, 111 Wn.2d at 263.

In *Kitsap Rifle I*, the Club did not assign error to any of the trial court's findings of fact regarding the Club's expansions of its nonconforming use. 184 Wn. App. at 267. Consequently, this court treated the unchallenged findings as verities on appeal. *Id.* Therefore, those findings also are verities in this appeal. *See Folsom*, 111 Wn.2d at 263.

Whether an activity constitutes an expansion or an intensification is a question of law. *Kitsap Rifle* I, 184 Wn. App. at 272. Therefore, we review de novo the trial court's legal conclusions on this issue. *Elliott Bay Adjustment Co., Inc. v. Dacumos*, 200 Wn. App. 208, 213, 401 P.3d 473 (2017).

We generally review the terms of an injunction for an abuse of discretion. *Kitsap Rifle* I, 184 Wn. App. at 297. "Trial courts have broad discretionary power to fashion injunctive relief to fit the particular circumstances of the case before it." *Hoover v. Warner*, 189 Wn. App. 509, 528, 358 P.3d 1174 (2015). But we review de novo questions of law regarding injunctions. *See*

*Kitsap Rifle* I, 184 Wn. App. at 297.  In addition, a trial court necessarily abuses its discretion if it based its ruling on an erroneous view of the law.  *Tedford v. Guy*, 13 Wn. App. 2d 1, 13, 462 P.3d 869 (2020).

The Club argues that if this court vacates the trial court's declaratory judgment, the court also must vacate the corresponding injunction.  The County does not appear to dispute this contention.

B.     EXPANSION OF USE ANALYSIS

The Club argues that the trial court did not follow this court's instructions in *Kitsap Rifle* II on remand in that the prohibition on the use of cannons and exploding targets, the discharge of fully automatic weapons and the discharge of semiautomatic rifles greater than .30 caliber, and the number of practical shooting competitions and practices do not reflect that only expansions of nonconforming use and not mere intensifications can be prohibited.  We conclude that the trial court did not err with regard to the first two prohibitions, but did err in limiting the Club's regularly scheduled practical shooting to two competitions and 10 practices per month.

1.    Cannons and Exploding Targets

The June 2019 order found that "discharging cannons or causing exploding targets to explode" constituted an unlawful expansion of the Club's nonconforming use.  CP at 446.  The Club argues that the June 2019 order did not clarify which explosive devises and what specific use of the cannons and exploding targets created the expansion.  We conclude that the Club waived this argument.

In the trial court, the County's attorney stated that "at least with respect to the order as it pertains to exploding targets.  That's a compromised agreement."  RP at 25.  The Club's attorney replied, "Yeah; and, you know, we don't want to rehash things that are common in the two

orders." RP at 25. Later, the County's attorney stated, "1(c) and 6(a)(3), discharge of cannons or causing exploding targets to explode. That right there, that phrase, is agreed upon amongst the parties. Now the definitions, that's different, but that particular clause is agreed upon." RP at 26. The Club's attorney did not object to that statement.

The Club argues only that it took the position that this language was acceptable only if the court defined "cannons" and "exploding targets." But that is a different argument (discussed below); that argument does not address whether the use of cannons and exploding targets constituted an expansion of use.

The trial court record shows that the Club agreed that the use of cannons and exploding targets constituted an expansion of use. We decline to consider the Club's argument that the trial court erred in ruling that discharging cannons or causing exploding targets to explode constituted an unlawful expansion of the Club's nonconforming use.

2. Fully Automatic Firearms and Semiautomatic Rifles Greater than .30 Caliber

The trial court's 2012 nuisance injunction prohibited the use of "fully automatic firearms" and "rifles of greater than nominal .30 caliber." CP at 114. The February 2016 order prohibited the use of "high caliber weaponry greater than .30 caliber." CP at 124. This court in *Kitsap Rifle* II remanded with specific instructions to the trial court (1) "to clarify which weapons are prohibited because they create noise levels that constitute an impermissible expansion of the Club's nonconforming use," and (2) to fashion a remedy that "reflect[s] that only the more recent increases in noise levels constitute an expansion of use." Slip op. at 21, 22.

The June 2019 order found that "the discharge of fully automatic firearms or the discharge of semiautomatic rifles greater than nominal .30 caliber" constituted an unlawful expansion of the Club's nonconforming use. CP at 446. The Club argues that the trial court

reached this conclusion without any finding regarding the specific firearms or caliber of those firearms that created the expansion of use. We disagree.

The trial court's 2012 findings of fact support the conclusion that discharge of fully automatic firearms and the discharge of semiautomatic rifles greater than nominal .30 caliber constituted an unlawful expansion. The court found that the "[u]se of *fully automatic* weapons, and constant firing of *semi-automatic* weapons led several witnesses to describe their everyday lives as being exposed to the 'sounds of war,' " which the trial court found persuasive. CP at 102 (emphasis added). By contrast, "[r]apid-fired shooting" and the "use of automatic weapons . . . at the Property occurred infrequently in the early 1990[]s." CP at 102.

In addition, this court in *Kitsap Rifle* I noted that the trial court had concluded that increased noise levels caused by, among other things, " 'high caliber weaponry greater than [.]30 caliber' " constituted an expansion of the Club's nonconforming use. 184 Wn. App. at 272. The court held that these "activities did constitute an impermissible expansion of use." *Id.* at 273. In other words, the court affirmed the trial court's conclusion of law that use of weapons greater than .30 caliber and other activities constituted an expansion. As noted above, that holding is the law of the case. *Folsom*, 111 Wn.2d at 263.

This court in *Kitsap Rifle* II interpreted *Kitsap Rifle* I as holding that "the noise created by the use of fully and semiautomatic weapons created an impermissible noise expansion because it contributed to the shooting range's dramatically increased noise levels." *Kitsap Rifle* II, slip op. at 21-22. And the court in *Kitsap Rifle* II stated that "the trial court did not make any findings regarding increased noise levels by high caliber weapons *other than fully and semiautomatic weapons*." Slip op. at 22 (emphasis added).

The Club appears to argue that the trial court should have engaged in additional fact finding to clarify *which* fully and semiautomatic weapons increased the noise levels beginning in around 2006. But because the February 2016 order too broadly prohibited the use of all weapons greater than .30 caliber, this court in *Kitsap Rifle* II required clarification only as to which *weapons* were found to create an impermissible expansion. *Kitsap Rifle* II, slip op. at 21. The June 2019 order provided this clarification based on the 2012 findings, limiting the expansion to the discharge of fully automatic weapons and the discharge of semiautomatic rifles greater than .30 caliber. This court in *Kitsap Rifle* II did not request clarification of which specific types of fully automatic firearms and semiautomatic rifles caused the expansion. Therefore, we decline to engage in the fact-finding requested by the Club.

We conclude that the trial court did not err in ruling that the Club's discharge of fully automatic firearms and the discharge of semiautomatic rifles greater than nominal .30 caliber constituted an unlawful expansion of the Club's nonconforming use and in prohibiting those activities.

### 3. Practical Shooting Competitions and Practices

In 2012, the trial court entered a conclusion of law that increased noise levels caused by (among other things) practical shooting constituted an expansion of use. The February 2016 order prohibited "[p]ractical shooting, [sic] uses, including organized competitions and practice sessions." CP at 124. This court in *Kitsap Rifle* II remanded with specific instructions to the trial court (1) "to clarify whether 'practical use' includes only practical shooting practices and competitions or whether practical use includes other conduct," and (2) to fashion a remedy that "reflect[s] only the more recent increases in noise levels constitute an expansion of use." Slip op. at 23, 24.

16

The June 2019 order concluded that "more than two scheduled practical shooting competitions per month and more than ten scheduled practical shooting practices per month" constituted an unlawful expansion of the Club's nonconforming use. CP at 446. The Club argues that the trial court reached this conclusion without any findings regarding the number of practical shooting competitions and practices that occurred before the expansion. We agree with the Club.[3]

The trial court found in 2012 that the shooting range "is frequently used for regularly scheduled practical shooting practices and competitions, which use the shooting bays for rapid-fire shooting in multiple directions." CP at 99. The court also found that "[r]apid-fire shooting . . . occurred infrequently in the early 1990s." CP at 102. But the court's 2012 findings of fact did not specifically address the *number* of practical shooting competitions and practices that occurred before or after the expansion.

The County relies on evidence presented at the 2012 trial regarding the number of activities at the shooting range. The County claims that this evidence shows that in the 2004-2006 time frame there were less than the 12 practical shooting competitions and practices allowed in the 2019 order.

However, the trial court made no findings of fact in 2012 regarding this evidence. In addition, the trial court's June 2019 order could not have been based on this evidence because the trial court admitted that it did not remember the trial evidence. Therefore, the County cannot

---

[3] The trial court did comply with the first instruction in *Kitsap Rifle* II by clarifying that only scheduled practical shooting competitions and practices were limited.

rely on this evidence.[4]  In any event, the Club claims that the evidence at trial showed that there may have been as many as 18 scheduled events in a month before the expansion in 2005 or 2006.

We conclude that the trial court erred in concluding that more than two scheduled practical shooting competitions per month and more than 10 scheduled practical shooting practices per month constituted an unlawful expansion of the Club's nonconforming use because it does not reflect only the more recent noise levels, as instructed by this court in *Kitsap Rifle* II.

### 4.    Summary

We vacate the part of the trial court's declaratory judgment ruling that "more than two scheduled practical shooting competitions per month and more than ten scheduled practical shooting practices per month," CP at 446, constituted an unlawful expansion of the Club's nonconforming use and the corresponding injunction provision.  We remand for the trial court to conduct additional fact finding on the number of practical shooting competitions and practices held at the Club before the expansion of the Club's nonconforming use in 2005 or 2006.  The trial court should prohibit only practical shooting competitions and practices above that number. We affirm the other portions of the declaratory judgment.

### C.    UNDEFINED TERMS IN 2019 INJUNCTION

The Club argues that portions of the injunction in the June 2019 order must be vacated because the trial court should have defined the terms "cannons," "exploding targets," "rifles greater than nominal .30 caliber," and "practical shooting."  We conclude that the trial court's

---

[4] In addition, the witness who presented this evidence testified that his summaries were incomplete and that there were gaps in his data collection.

injunction enjoining the discharge of "cannons" must be vacated, but not the other portions of the injunction.[5]

1.    Legal Principles

CR 65(d) sets forth the form and scope of an injunction and provides that "[e]very order granting an injunction . . . shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained."  Because Federal Rule of Civil Procedure (FRCP) 65(d) is identical to CR 65(d), we may look to cases interpreting the federal rule for guidance.  *All Star Gas, Inc. of Wash. v. Bechard*, 100 Wn. App. 732, 736-37, 998 P.2d 367 (2000).

FRCP 65(d) " 'was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood.' "  *Fortyune v. Am. Multi–Cinema, Inc.*, 364 F.3d 1075, 1087 (9th Cir. 2004) (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476, 94 S. Ct. 713, 38 L. Ed. 2d 661 (1974)).  As a result, FRCP 65(d) requires that the language of an injunction be reasonably clear so that an ordinary person will know precisely what action is prohibited.  *United States v. Holtzman*, 762 F.2d 720, 726 (9th Cir. 1985).  Injunctions do not violate the requirements of FRCP 65(d) "unless they are so vague that they have no reasonably specific meaning."  *Id.*

2.    "Cannons" and "Exploding Targets"

The Club argues that the trial court's June 2019 order should have defined the terms "cannons" and "exploding targets" because they are vague and ambiguous.  We agree with regard to "cannons."

---

[5] Initially, the County argues that we decline to consider the Club's arguments because the Club did not challenge the meaning of these terms in the first two appeals.  We disagree.  The meaning of these terms was not at issue in the prior appeals.

In the trial court, the Club proposed definitions of these terms. The County does not explain what it believes the term "cannons" means. The term could refer to any number of things; there are many different types of "cannons." It is unclear what type of cannon the trial court was referencing. The County notes only that the trial court found in 2012 that the use of cannons and exploding targets caused "loud 'booming' sounds in residential neighborhoods within two miles of the property, and cause houses to shake." CP at 103. Therefore, we remand this part of the injunction for the trial court to define the operative term "cannons."

On the other hand, term "exploding target" has a generally accepted meaning based on the trial court's finding in 2012 that exploding targets caused loud, booming sounds in nearby residential neighborhoods. An exploding target should be understood to be a target the triggers an explosive device within the target that results in a loud noise.

### 3. "Rifles Greater than Nominal .30 Caliber"

The Club argues that the trial court's June 2019 order should have defined the terms "rifle" and "nominal .30 caliber" because their meaning is uncertain. We disagree.

In the trial court, the Club proposed definitions of these terms. The County does not explain what it believes "rifle" and "nominal .30 caliber" mean. However, we believe that these terms have generally accepted meanings, particularly among gun owners and users. Therefore, the prohibition of rifles greater than .30 caliber in the injunction is reasonably clear. We hold that the trial court did not err in failing to define that phrase.

### 4. "Practical Shooting"

The Club argues that although the trial court defined "practical shooting" in the 2012 judgment, it is unclear whether the court intended that definition to apply to the June 2019 order. And the Club claims that the terms within that definition themselves are unclear. We disagree.

The 2012 judgment stated that practical shooting competitions and practices "use the shooting bays for rapid-fire shooting in multiple directions." CP at 99. The Club acknowledges that this description constitutes a definition of "practical shooting." And in the trial court, the Club proposed adoption of this definition.

We believe that the trial court's 2012 finding of fact provides a reasonable definition of "practical shooting." In addition, the terms within that definition have generally accepted meanings that are reasonably clear. Therefore, we hold that the trial court did not err in failing to define that term.

D.      BALANCING THE EQUITIES

The Club argues that the trial court erred by issuing the land use injunction without balancing the relative interests of the parties and the public. We disagree.

In general, issuing an injunction may involve an equitable balancing of the relative interests of the parties and the interests of the public. *Tyler Pipe Indus., Inc. v. Dep't of Revenue*, 96 Wn.2d 785, 792, 638 P.2d 1213 (1982). However, the issuance of the land use injunction was not at issue on remand from *Kitsap Rifle* II. This court remanded for the trial court to revise the language of the injunction. Therefore, we conclude that the balancing of the equities requirement does not apply here.

CONCLUSION

We hold that the trial court erred by concluding that "more than two scheduled practical shooting competitions per month and more than ten scheduled practical shooting practices per month" constituted an unlawful expansion of the Club's nonconforming use. In addition, we conclude that the trial court erred by enjoining the discharge of "cannons" without defining that term.

No. 53898-9-II

Accordingly, we vacate in part the declaratory judgment and land use injunction in the trial court's 2019 order and remand with specific instructions for the trial court to (1) determine the number of practical shooting competitions and practices held at the Club before the expansion of use in 2005 or 2006 and to prohibit only those competitions and practices above that number, and (2) define the terms "cannons." We affirm the remaining portions of the June 2019 order's declaratory judgment and land use injunction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

WORSWICK, P.J.

MELNICK, J.

22